UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| | * | |
| v. | * | Criminal Action No. 01-10118-JLT |
| | * | |
| | * | |
| LUIS DE LA CRUZ, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

August 30, 2007

TAURO, J.

Following a jury trial, Defendant Luis De La Cruz was convicted in United States District Court for the District of Massachusetts of conspiracy to possess with intent to distribute, and to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. § 846 (Count I) and possession with intent to distribute, and distribution of, heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). Both counts also alleged that the offenses resulted in the death of Bryan Wallace.

On May 12, 2005, the same day as his conviction, Defendant filed a Motion for a New Trial. The District Court Judge agreed to give Defendant additional time in which to brief the motion, but a hearing date was never set.

Defendant was sentenced before Judge Keeton on February 14, 2006. He then appealed his conviction to the First Circuit on March 10, 2006. Four months later, Defendant filed a

memorandum in support of his previously filed motion for a new trial.

This court receives this case on remand from the First Circuit, with instructions to consider the merits of Defendant's pending Motion for a New Trial [#339], and to resolve any procedural doubts in his favor.[1] This motion has been fully briefed and a motion hearing was held on July 19, 2007.

**Standard of Review**

This court will grant a new trial "if the interest of justice so requires."[2] Under First Circuit precedent, such a remedy is used rarely, and is warranted only to avoid a miscarriage of justice or where the evidence weighs heavily against the verdict.[3]

**Discussion**

Defendant submits eight arguments as to why a new trial is warranted. This court addresses his arguments below, in the same order that Defendant raises them.

I. SPEEDY TRIAL ACT

Defendant asserts that the Government violated the Speedy Trial Act by returning the second superseding indictment more than thirty days after his arrest, in violation of 18 U.S.C. § 3161(b), and too close to his scheduled trial date. But under 18 U.S.C. § 3162(a)(2), "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to

---

[1] See Order of Court, May 14, 2007 [#386].

[2] Fed. R. Crim. P. 33.

[3] See United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996).

dismissal under this section." Here, Defendant did not move for dismissal prior to trial.[4] Accordingly, his claims were waived and they cannot now serve as the basis for granting a new trial.[5]

## II. EXPERT WITNESS'S TESTIMONY ON PURITY

Defendant maintains that he deserves a new trial because he did not receive prior notice from the Government that its expert witness, forensic chemist Stacey Turner, would testify about the purity of the heroin found near Bryan Wallace at the time of his death. Defendant argues that the trial court should have struck this testimony, or at the very least, given Defendant a longer continuance to prepare additional cross-examination.

At trial, DEA chemist Stacey Turner testified that the heroin found in the Wallace house had a purity level of 80%, or higher. Defendant promptly objected to Turner's testimony and moved to strike. The trial judge denied this motion. After cross- and redirect-examination of Turner, Defendant renewed his objection to her testimony. Defendant was concerned that the Government would use Turner's testimony about purity to argue that the heroin seized from the Wallace home was different than the heroin seized two weeks later from Roberto Herrera, a runner working for a competing drug-dealing organization which also sold heroin to Alison

---

[4] This court does not construe Defendant's Emergency Motion to Go to Trial on First Superseding Indictment [#217] as a motion to dismiss because that motion specifically reserved Defendant's right to bring a motion to dismiss the second superceding indictment in the future.

[5] See United States v. Spagnuolo, 469 F.3d 39, 46 (1st Cir. 2006) ("[J]ust as the Act provides a remedy for violation of its speedy trial mandate, so too it unequivocally provides that the failure of a defendant to move for dismissal prior to trial constitutes a waiver of any right to that remedy.") (quoting United States v. Gomez, 67 F.3d 1515 (10th Cir. 1995)).

Tracy.[6] The Government announced that it would not use purity levels to draw such a distinction. Defendant asked the judge to give a specific instruction to the jury on the matter, but the judge declined, noting that a jury instruction would only emphasize the testimony.[7]

Defendant then asked for a continuance of the trial so that he could have additional time to confer with a forensic toxicologist. The trial court said that it would give Defendant the lunch recess, but would not continue the trial any longer.

The Government did not meet its disclosure requirements, and should have informed the Defendant of its plan to elicit testimony about the purity of the heroin found in the Wallace home.[8] Nonetheless, the court will not grant a new trial because Defendant fails to meet the standard established by the First Circuit in United States v. Melucci, which requires a defendant to show that he suffered actual prejudice from the inadequate disclosure.[9] Defendant must show that learning the information altered his subsequent defense strategy, and that if he had known earlier, he would have likely used a more effective strategy.[10]

---

[6] Turner testified that the heroin taken from Herrera had a purity level of 37%.

[7] 10 Tr. 86:19-23 (The Court: "[T]he jury is not going to be told anything about [Turner's testimony on purity]. It seems to me that asking for an instruction to the jury is simply like telling a kid, 'don't put that orange seed in your ear.' They wouldn't think about it if you didn't bring it up.").

[8] The Government disclosed before trial that Turner would testify about her analysis of the exhibits, but it did not specifically disclose that Turner would testify about the purity of the heroin found at the Wallace home.

[9] See 888 F.2d 200, 203 (1st Cir. 1989) (finding that a defendant must show actual prejudice where he alleges that the Government failed to give adequate notice of its expert witness testimony).

[10] United States v. Lemmerer, 277 F.3d 579, 588 (1st Cir. 2002).

Here, Defendant makes no such showing.[11]  Nor could he.  Turner's testimony on the purity of the heroin found in the Wallace home was cumulative with what the jury had already heard.  Turner had previously testified that the heroin found at the Wallace home was uncut, while the heroin found on Herrera was cut with lactose.

Further, the testimony of various witnesses had already firmly connected Defendant to the death of Bryan Wallace. The jury heard testimony that Defendant led an organization that sold heroin on a daily basis, and that Alison Tracy had purchased heroin from Defendant on March 8, 2001.[12]  Tracy testified that the bags of heroin she purchased from Defendant that day bore markings of blue stars and black eagles.[13]  These markings were also confirmed by Elison Anziani.[14]

Jesse Flynn testified he bought bags of heroin from Alison Tracy on March 8, 2001. He then sold bags marked with blue stars and black eagles to Bryan Wallace the following day.[15] Bryan Wallace died on March 10, 2001.  Expert witness Dr. Thomas Andrew testified that his death was the result of a heroin overdose.[16]  Opened bags with traces of heroin were found by the

---

[11] See id. ("'[Defendant] cannot rely on wholly conclusory assertions but must bear the burden of producing, at the very least, a *prima facie* showing of a plausible strategic option which the delay foreclosed.'") (quoting United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990)).

[12] 6 Tr. 52-53; 8 Tr. 61-63; 5 Tr. 92-93; 6 Tr. 172-73.

[13] 6 Tr. 173-74.

[14] 10 Tr. 14:18-25.

[15] 5 Tr. 92-93, 96; 6 Tr. 173;

[16] 7 Tr. 75-78.

police at the scene of Bryan Wallace's death.[17]  These bags were marked with black eagles and blue stars.[18]  In the face of such evidence, this court does not see how Turner's disclosure regarding purity prejudiced the Defendant.

III. MEDICAL EXAMINER TESTIMONY

The Government's expert, Dr. Thomas Andrew, testified at trial that, in his opinion, Bryan Wallace died of "acute opiate intoxication" and that Mr. Wallace would not have died had he not taken heroin.[19]  Defendant insists that the trial court's admission of this testimony was erroneous. Because Dr. Andrew did not personally conduct the toxicology tests or autopsy, Defendant maintains that he was not qualified to offer conclusions about their contents.  Finally, Defendant submits that the admission of Dr. Andrew's testimony violated Defendant's Sixth Amendment right of cross-examination.

This court is unpersuaded by Defendant's argument.  No Crawford violation occurred here because Dr. Andrew's statements were not testimonial hearsay.[20]  Rather, Dr. Andrew provided in-court statements based on his extensive training and experience about the conclusions that he reached after reviewing the police reports, crime scene photographs, toxicology report, and autopsy report.

Dr. Andrew based his opinion on facts not admitted in evidence.  But, as the trial court

---

[17] 4 Tr. 113-115.

[18] Id.

[19] 7 Tr. 75-78.

[20] See Crawford v. Washington, 541 U.S. , 59 n.9 (2004) ("The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

correctly found, this is expressly permitted by Fed. R. Evid. 703.[21] And this court is aware of no rule of evidence which prohibits an expert from giving an opinion informed by facts that he did not personally collect.[22]

Expert testimony is admissible where it concerns "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue."[23] Such was the case here. Dr. Andrews is the chief medical examiner for the state of New Hampshire and has considerable experience in the field of heroin overdoses.[24] He gave his informed opinion to the jury about Bryan Wallace's cause of death. The trial court did not err in allowing this testimony.

Defendant points out that Dr. Chirkov, the medical examiner who personally performed the autopsy, was available to testify. The trial court pointed out this same fact at trial when Defense counsel raised these same objections.[25] If Defendant wanted to call the medical examiner who performed the autopsy as a witness he was welcome to. He did not. But this does not serve as the basis for granting a new trial.

---

[21] Fed. R. Evid. 703 permits an expert to base his opinion on facts presented to him outside of court, but not perceived by him personally where they are the type of facts reasonably relied on by experts in his field in drawing such conclusions.

[22] See Howard v. Walker, 406 F.3d 114, 127 (2d Cir. 2005) ("It is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others."). See also Delaware v. Fensterer, 474 U.S. 15 (1985) (finding no confrontation clause violation where expert could not remember the basis for his opinion).

[23] Fed. R. Evid. 702.

[24] 7 Tr. 39:11-12; 7 Tr. 47:20-22.

[25] 7 Tr. 36:21. See also 6 Tr. 81-82 (The Court: "The government has no obligation to call Dr. Chirkov. If you want to call him, you're free to try to get him here and to request my assistance if you need it.").

IV. GOVERNMENT WITNESS'S POST-CONVICTION LETTER

Defendant submits that a prison letter, written by cooperating government witness Elison Anziani after the trial, is newly discovered evidence which merits a new trial.

This court will grant a new trial based on newly discovered evidence where the defendant shows that:

> (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of defendant.[26]

The Defendant must meet all of these factors. If he does not, the court must deny his motion for a new trial.[27] Here, Defendant fails to meet parts three and four of the test. Defendant cannot show that the letter is material, or that it would probably result in the acquittal upon retrial.

The court has reviewed an English translation of Anziani's letter multiple times and is unable to decipher its true meaning. The letter is rambling, incomprehensible, and ambiguous. In his letter, Anziani says "I lied." But in the same letter Anziani also says that "At Luis' [De La Cruz's] trial I only told the truth and you and everyone, we already know this federal system. We know lies don't work, ok . . . "[28] Anziani also notes that "Luis didn't lose the trial because of me,

---

[26] United States v. Colon-Munoz, 318 F.3d 348, 358 (1st Cir. 2003) (quoting United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980)).

[27] United States v. Falu-Gonzalez, 205 F.3d 436, 442 (1st Cir. 2000); United States v. Natanel, 938 F.3d 302, 313 (1st Cir. 1991).

[28] Govt's Ex. A, p.1 [#390-2].

8

he lost because he was guilty . . . ."[29]

Anziani's ambiguous statements are not enough to establish that Defendant would likely be acquitted on retrial. As the Government points out, Anziani's testimony was consistent with the testimony of the other witnesses. And except for the discussion of drug weight,[30] Anziani's testimony was cumulative. Other witnesses established that Defendant dealt heroin, and that he sold heroin to Alison Tracy on March 8, 2001. This resulted in the death of Bryan Wallace. Even without Anziani's testimony, the jury would still have convicted the Defendant.

V. FORESEEABILITY OF CHARGED OFFENSE

Defendant argues that the trial court failed to properly instruct the jury on the issue of foreseeability as it relates to both drug quantity and the death of Bryan Wallace, and that the trial court abused its discretion in refusing to allow defense counsel to address the issue of foreseeability in its closing arguments. Defendant also asserts that the verdict form misstated the law. The court is not convinced by such arguments.

Whether Bryan Wallace's death was foreseeable is irrelevant, as foreseeability is not a required element of the crime.[31] Courts apply a strict liability standard to the "death resulting"

---

[29] Id.

[30] As the Government points out, Anziani's testimony on drug weight affected the statutory maximum, but did not affect Defendant's conviction or sentence. Defendant was sentenced to twenty years in prison, which is the mandatory minimum for drug distribution resulting in death.

[31] See United States v. Soler, 275 F.3d 146, 152-53 (1st Cir. 2002) ("The fact that the statute does not speak to the defendant's state of mind undercuts the appellant's argument that we should impose some kind of foreseeability test.").

9

provision in the statute, respecting the statute's plain meaning.[32] Likewise, it does not matter whether Bryan Wallace obtained the heroin directly from Defendant. Instead, the Government only had to show that Defendant put heroin into a distribution chain which led to Wallace's death.[33] The trial court properly instructed the jury on the law and was correct in preventing defense counsel from arguing the issue to the jury.

Nor did the court err in its lack of jury instructions regarding foreseeability relating to drug quantity. The relevant quantity for the jury to consider under section 841(b)(1) is the quantity "attributable to the conspiracy as a whole."[34]

The trial court instructed the jury that in order to find Defendant guilty, they had to find that Bryan Wallace used heroin, that this heroin was the "but for" cause of his death, and that the heroin was distributed by the conspiracy. This instruction was correct.[35] Accordingly, the court sees no reason to grant a new trial on this ground.

## VI. JURY INSTRUCTION ON MULTIPLE CONSPIRACIES

Defendant next raises the trial court's refusal to give a jury instruction on multiple conspiracies. Because there were two distinct conspiracies discussed during the trial, Defendant

---

[32] See United States v. Wall, 349 F.3d 18, 23-25 (1st Cir. 2003); Soler, 275 F.3d at 153 ("when a defendant deals drugs and a user of those drugs dies as a result, section 841(b)(1)(C) applies without any independent proof that the death was a reasonably foreseeable event"); United States v. McIntosh, 236 F.3d 968, 972 (8th Cir. 2001) ("giving effect to [the statute's] plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement").

[33] See Soler, 275 F.3d at 152-53.

[34] United States v. Irizarry, 404 F.3d 497, 503-04 (1st Cir. 2005).

[35] For these same reasons, the trial court's jury verdict form was also proper.

argues that the court should have given his suggested instruction on multiple conspiracies to the jury. Defendant is mistaken. Evidence was presented at trial regarding two separate heroin dealing organizations–Defendant's organization, and Miguel's organization (a/k/a the Anziani Frias organization). The Government's theory of the case was that Defendant sold the heroin that killed Bryan Wallace. Defendant argued that the heroin actually came from the "Miguel" organization. The trial court instructed the jury that:

> The defendant cannot be found guilty of being a member of
> the conspiracy charged in the indictment unless you find that
> he knowingly and willfully became a member of that
> conspiracy. The defendant is not on trial in this case for
> alleged participation in any conspiracy other than the one
> charged in the indictment.[36]

Given the facts of the case, and the trial court's instructions, this court concludes that no error occurred.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant requests a new trial on the grounds that he received ineffective assistance of counsel. Specifically, Defendant asserts that his counsel failed to "adequately develop the various degrees of purity of heroin found at the decedent's house and seized from Roberto Herrara," and that he failed to have the decedent's blood tested for heroin.[37]

These arguments fail because defense counsel's performance did not fall below an objective standard of reasonableness, nor was there a reasonable probability that, but for the

---

[36] 11 Tr. 126.

[37] Def.'s Mem. of Law in Supp. of Mot. for New Trial,18-19, [#359].

...

defense counsel's errors, the results would have been different.[38]

Although this court is unclear what Defendant means by "adequately develop" the various degrees of purity of heroin, the court notes that this issue was touched on during the trial. To wit, DEA forensic chemist Stacey Turner testified that there was no way to do a comparative analysis of the heroin. Specifically, she testified that:

> We cannot perform what people call 'comparative analysis.' There's no way for us to be absolutely sure that the two or more substances are exactly the same. All we can say is that they're the same purity or about the same purity and they contain the same things, but the origin of the sample, we're unable to determine where that's actually from.[39]

Accordingly, neither the Government nor the Defendant could do a "comparative analysis" of the heroin found at the scene of Bryan Wallace's death and the heroin later taken from Roberto Herrera. Defense counsel's failure to conduct a test that was not available does not amount to ineffective assistance.

Nor does defense counsel's cross-examination of DEA forensic chemist Stacey Turner qualify as ineffective. Defense counsel made numerous objections to the Government's direct-examination of Turner, and this court will not, in hindsight, second-guess the trial tactics employed by defense counsel.[40]

Further, as the Government points out, Defendant's argument about his counsel's failure

---

[38] See Strickland v. Washington, 466 U.S. 668, 686-87 (1984) (setting the standard that a defendant must meet in order to establish ineffective assistance of counsel).

[39] 10 Tr. 77:5-10.

[40] See United States v. Ortiz Oliveras, 717 F.2d 1, 3-4 (1st Cir. 1983).

to have decedent's blood tested for heroin is inconsequential. As Dr. Andrew made clear during his testimony, when heroin is ingested it is rapidly converted by enzymes into a chemical called 6-monoacetylemorphine. After about an hour, this chemical then becomes free morphine.[41] So even if a blood test had been performed for heroin, it would have shown nothing, because Bryan Wallace's body had already converted the heroin into free morphine. This is further confirmed by the toxicology report, which showed that Bryan Wallace had free morphine in his blood.[42]

VIII. VERDICT CONTRARY TO WEIGHT OF EVIDENCE

After reviewing the trial transcript, this court concludes that the verdict is not contrary to the evidence presented. The evidence was more than ample for a jury to conclude, beyond a reasonable doubt, that Defendant conspired to distribute, and distributed, more than a kilogram of heroin, and that this distribution of heroin resulted in the death of Bryan Wallace.

For all of the reasons set forth above, Defendant's Motion for a New Trial [#339] is DENIED.

AN ORDER WILL ISSUE.

/s/ Joseph L. Tauro
United States District Judge

---

[41] 7 Tr. 112:17-23.

[42] 7 Tr. 72:8-11.